**LAYFIELD & BARRETT, APC**
Shane D. Gosdis (13959)
s.gosdis@layfieldbarrett.com
2720 Homestead Rd., Suite 200
Park City, UT 84098
Telephone: (435) 602-4288
Facsimile: (800) 611-9861

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| DENISE TRELLA, for and behalf of all heirs of Jason Nakonechni;<br><br>Plaintiff(s),<br><br>v.<br><br>G6 HOSPITALITY, LLC, a foreign limited liability company d/b/a Motel 6; SECURITAS SECURITY SERVICES USA, INC., a foreign corporation; MARILEE JOANN BORDEN, an individual; ALLISON WELLS, an individual; MICHAEL SHAINE SNYDER, an individual; RODNEY NEIL MAXWELL, an individual; COREY LEE PETERSEN, an individual; and DOES 1-10, inclusive;<br><br>Defendants. | **FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br>Case No.: 2:17-cv-00173-BCW |

Plaintiff, Denise Trella, for and on behalf of all the heirs of Jason Nakonechni, by and through undersigned counsel, complains against Defendants and for causes of action alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Denise Trella, is an individual, and is a citizen of the State of Utah ("Trella"). Trella is the mother of decedent Jason Nakonechni ("Jason"). She brings this suit on behalf of all heirs of Jason.

2. Defendant G6 Hospitality, LLC ("G6") is a Delaware limited liability company with its principal place of business in Texas, doing business as Motel 6 in Salt Lake County, Utah. G6 owns

1
FIRST AMENDED COMPLAINT

and/or operates the Motel 6 located at 1990 West North Temple, Salt Lake City, Utah (the "Motel 6").

3. Defendant Securitas Security Services, USA, Inc. is a Delaware corporation with its principal place of business in New Jersey, doing business in Salt Lake County, Utah ("Securitas"). Securitas provides security services for the Motel 6.

4. Defendant Marilee JoAnn Borden is an individual, and, on information and belief, is a citizen of the State of Utah. On information and belief, she was directly involved in planning and executing the plot to kill Jason.

5. Allison Wells is an individual, and, on information and belief, is a citizen of the State of Utah. On information and belief, she was directly involved in planning and executing the plot to kill Jason.

6. Michael Shaine Snyder is an individual, and, on information and belief, is a citizen of the State of Utah. On information and belief, he was directly involved in planning and executing the plot to kill Jason.

7. Rodney Neil Maxwell is an individual, and, on information and belief, is a citizen of the State of Utah. On information and belief, he was directly involved in planning and executing the plot to kill Jason.

8. Corey Lee Petersen is an individual, and, on information and belief, is a citizen of the State of Utah. On information and belief, he was directly involved in planning and executing the plot to kill Jason.

9. Defendant Does 1 – 10 are other unknown individuals that contributed to or caused Jason's death. The true names of Does 1 -10 and their involvement in this matter are currently unknown. Plaintiff will amend the Complaint to allege the names and involvement of said Doe Defendants upon discovery of that information.

10. Jurisdiction is proper in the Third Judicial District Court, Salt Lake County, State of Utah, pursuant to U.C.A. § 78A-5-102.

## GENERAL ALLEGATIONS

11. Upon information and belief there is a history of criminal activity at the Motel 6, including violent crimes.

12. Defendants are aware or should be aware of the historical criminal activity which takes place at the Motel 6.

13. Upon information and belief, the Motel 6 is a historic location for criminal activity because of its lack of security and other precautions, lack of supervision, and reluctance to involve the police.

14. On the evening of September 4, 2016, Jason was lured to the Motel 6 by Marilee Joann Borden ("Borden").

15. Three or more other individuals were hiding in Borden's rented Motel 6 room and waiting to ambush Jason as he entered. Upon information and belief, these individuals include Michael Shaine Snyder, Corey Lee Petersen, Rodney Neil Maxwell, and/or Allison Wells (together with Borden, the "Assailants").

16. As he entered the room, the Assailants began to viciously and brutally attack Jason.

17. Upon information and belief, Jason attempted to flee during the attack but was captured by the assailants before he could escape.

18. Upon information and belief, the Assailants' attack on Jason was so vicious and brutal that it resulted in Jason's loss of blood and several teeth.

19. The Assailants' attack on Jason was loud. It resulted in several invitees calling the front office to complain. On information and belief, G6 and Securitas failed to immediately respond to the complaints. On information and belief, G6 and Securitas also failed to immediately report the disturbance to the police.

20. As a result, the Assailants had time to remove Jason's beaten, semi-conscious body from the room. On information and belief, they dragged him from the hotel in plain sight and put him into a waiting vehicle in the parking lot. Upon information and belief, G6 and Securitas witnessed or should have witnessed the Assailants remove Jason's beaten, semi-conscious body from the room.

21. Upon information and belief, after the Assailants removed Jason's beaten, semi-conscious body from the room, G6 inspected the room. G6 discovered open and obvious evidence of criminal activity including blood and teeth in the motel room.

22. Nonetheless, G6 and Securitas failed to notify the police about the altercation resulting in several invitees' complaints, or the discovery of blood and teeth in the room.

23. Upon information and belief, G6 and Securitas maintain cameras at the Motel 6. However, the camera that would have recorded the assailants removing Jason from the Motel 6, the vehicle he was placed into, and the identity of the assailants, was inoperative at the time. Had it been operable it could have provided important details to the police that could have prevented Jason's death.

24. Upon information and belief, after abducting Jason, one or more of the Assailants returned to the Motel 6, and the manager allowed them back into the room where the altercation took place to remove personal property left behind.

25. At no time did G6 and Securitas contact the police, despite several indications of foul play and criminal activity.

26. Upon information and belief, after abducting Jason, the Assailants continued to viciously and brutally beat Jason at one or more other locations. Upon information and belief, this included being beaten, slapped, being punched with brass knuckles, and having a screwdriver shoved into his ear. This torture resulted in painful injuries to Jason including a fractured maxilla, fractured sternum, and fractured ribs.

27. The Assailants' above-referenced vicious and brutal attack resulted in Jason's death.

28. G6 and Securitas are liable for the actions and inactions of their respective employees pursuant to the doctrine of *respondeat superior* or otherwise.

### FIRST CAUSE OF ACTION – NEGLIGENCE
### (Against G6 and Securitas)

29. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

30. G6 and Securitas owed various duties of care to Jason, including, among other things, to provide adequate security at the Motel 6, to protect Jason from intentional injuries caused by third

parties, to timely intervene in any dangerous situations, and to timely report criminal activity to the police.

31. G6 and Securitas breached the duties of care by, among other things:

   a. Failing to timely follow-up on complaints by neighboring Motel 6 guests;

   b. Failing to provide adequate security for Jason as a invitee of Motel 6;

   c. Failing to maintain operative cameras which could have disclosed to police vital information such as the fact of the abduction of Jason, the identity of his abductors, and a description of their vehicle(s), which could have prevented Jason's death;

   d. Failing to notify police after repeated indications of foul play or criminal activity; and

   e. Failing to investigate and/or notify the police after Assailants returned to the rented room to remove personal property when they did not have a motel key, and with knowledge that the room was likely a crime scene.

32. Had G6 and Securitas done the foregoing Jason's murder could have been prevented.

33. G6 and Securitas had multiple opportunities to contact the police or otherwise intervene, which would have saved Jason's life, but failed to do so.

34. As a direct and proximate result of the foregoing breaches of the standard of care, Jason was tortured and murdered, which could have been avoided.

35. The actions and inaction of G6 and Securitas contributed in natural and/or continuous sequence to and were a substantial factor in Jason's death.

36. G6 and Securitas' negligence caused or was a substantial factor in Jason's death.

37. As a direct and proximate result of the negligence of G6 and Securitas, Plaintiff and the other heirs of Jason have been deprived of his society, solace and comfort, and companionship, and have suffered great mental and emotional distress, pain and suffering, in an amount to be proved at trial.

38. The acts and omissions of G6 and Securitas manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

39. The acts and omissions of G6 and Securitas justify punitive and/or exemplary damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION – WRONGFUL DEATH
### (Against G6 and Securitas)

40. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

41. G6 and Securitas owed a duty of care to provide invitees such as Jason with reasonable security under the circumstances.

42. G6 and Securitas knew or should have known about the atmosphere of violence and history of criminal activity at the Motel.

43. G6 and Securitas breached the duties of care by, among other things:

   a. Failing to timely follow-up on complaints by neighboring Motel 6 guests;

   b. Failing to provide adequate security for Jason as a invitee of Motel 6;

   c. Failing to maintain operative cameras which could have disclosed to police vital information such as the fact of the abduction of Jason, the identity of his abductors, and a description of their vehicle(s), which could have prevented Jason's death;

   d. Failing to notify police after repeated indications of foul play or criminal activity; and

   e. Failing to investigate and/or notify the police after Assailants returned to the rented room to remove personal property when they did not have a motel key, and with knowledge that the room was likely a crime scene.

44. G6 and Securitas had multiple opportunities to contact the police or otherwise intervene, which would have saved Jason's life, but failed to do so.

45. As a direct and proximate result of the foregoing breaches of the standard of care, Jason was tortured and murdered, which could have been avoided.

46. The actions and inaction of G6 and Securitas contributed in natural and/or continuous sequence to and were a substantial factor in Jason's death.

47. G6 and Securitas' acts and ommisionscaused or were a substantial factor in Jason's death.

48. As a direct and proximate result of the fault of G6 and Securitas, Plaintiff and the other heirs of Jason have been deprived of his society, solace and comfort, and companionship, and have suffered great mental and emotional distress, pain and suffering, in an amount to be proven at trial.

49. The fault of G6 and Securitas manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

50. The fault of G6 and Securitas justifies punitive and/or exemplary damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION – PREMISES LIABILITY

### (Against G6 and Securitas)

51. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

52. G6 and Securitas knew or should have known that criminal activity, including violence, was a common occurrence at the Motel 6.

53. G6 and Securitas knew or should have known that the criminal activity at the Motel 6 presented an unreasonable risk of harm to people such as Jason.

54. G6 and Securitas knew or should have known that Jason would not discover that criminal activity at the Motel 6 posed an unreasonable risk of harm.

55. G6 and Securitas knew or should have known that Jason would not discover that the Motel 6 lacked proper security, and that Motel 6 is reluctant to become involved in police matters or otherwise fails or refuses to contact police upon discovery of a criminal or violent and dangerous situation.

56. G6 and Securitas knew or should have known that Jason would be unable to protect himself from the unreasonable risk of harm associated with Motel 6's lack of security and propensity not to involve the police.

57. G6 and Securitas failed to warn Jason of the unreasonable risk of harm at the Motel 6, and failed to take reasonable safety precautions to ensure his safety.

58. As a direct and proximate result of the foregoing breaches of the standard of care, Jason was tortured and murdered, which could have been avoided.

59. The actions and inaction of G6 and Securitas contributed in natural and/or continuous sequence to and were a substantial factor in Jason's death.

60. G6 and Securitas' acts and omissions caused or were a substantial factor in Jason's death.

61. As a direct and proximate result of the fault of G6 and Securitas, Plaintiff and the other heirs of Jason have been deprived of his society, solace and comfort, and companionship, and have suffered great mental and emotional distress, pain and suffering, in an amount to be proven at trial, but not less than $10,000,000.00.

62. The actions and inaction of G6 and Securitas manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

63. The actions and inaction of G6 and Securitas justify punitive and/or exemplary damages in an amount to be proved at trial.

### FOURTH CAUSE OF ACTION – SURVIVAL CLAIM
### (Against G6 and Securitas)

64. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

65. G6 and Securitas owed a duty of care to provide invitees such as Jason with reasonable security under the circumstances.

66. G6 and Securitas knew or should have known about the atmosphere of violence and history of criminal activity at the Motel 6.

67. G6 and Securitas breached the duties of care by, among other things:

    a. Failing to timely followup on complaints by neighboring Motel 6 guests;

    b. Failing to provide adequate security for Jason as a invitee of Motel 6;

    c. Failing to maintain operative cameras which could have disclosed to police vital information such as the fact of the abduction of Jason, the identity of his abductors, and a description of their vehicle(s), which could have prevented Jason's death;

8
FIRST AMENDED COMPLAINT

      d.      Failing to notify police after repeated indications of foul play or criminal activity; and

      e.      Failing to investigate and/or notify the police after Assailants returned to the rented room to remove personal property when they did not have a motel key, and with knowledge that the room was likely a crime scene.

68.    G6 and Securitas had multiple opportunities to contact the police or otherwise intervene, which would have saved Jason's life, but failed to do so.

69.    As a direct and proximate result of the foregoing breaches of the standard of care, Jason was tortured and murdered, which could have been avoided.

70.    The actions and inaction of G6 and Securitas contributed in natural and/or continuous sequence to and were a substantial factor in Jason's death.

71.    G6 and Securitas' fault caused or was a substantial factor in Jason's death.

72.    After being kidnapped and removed from the Motel 6, Jason was tortured and killed. Upon information and belief, this included being beaten, slapped, being punched with brass knuckles, and having a screwdriver shoved into his ear. This torture resulted in painful injuries to Jason including a fractured maxilla, fractured sternum, and fractured ribs.

73.    Pursuant to Utah Code Ann. Section 78B-3-107, Plaintiff is entitled to economic and non-economic damages, including pain and suffering endured by Jason until his death.

74.    As a direct and proximate result of the actions and inactions of G6 and Securitas, Jason suffered, and Plaintiff is entitled to recover damages including but not limited to, pain and suffering, in an amount to be proved at trial.

75.    The actions or inaction of G6 and Securitas manifested a knowing and reckless indifference toward, and a disregard of Jason's rights.

76.    The actions and inaction of G6 and Securitas justify punitive and/or exemplary damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION – ASSAULT AND BATTERY**

**(Against the Assailants)**

77. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

78. As outlined more fully above, the Assailants deliberately made physical contact with Jason, viciously and brutally attacking and killing Jason. Their physical contact with Jason was harmful because it caused Jason to suffer an inordinate amount of pain and resulted in his death.

79. Pursuant to Utah Code Ann. Section 78B-3-107, Plaintiff is entitled to economic and non-economic damages, including pain and suffering endured by Jason until his death.

80. As a direct and proximate result of the actions and inactions of the Assailants, Jason suffered, and Plaintiff is entitled to recover damages including but not limited to, pain and suffering, in an amount to be proved at trial.

81. The Assailants' acts or omissions and wrongful conduct caused or was a substantial factor in Jason's death.

82. As a direct and proximate result of the Assailants' acts, omissions and wrongful conduct, Plaintiff and the other heirs of Jason have been deprived of his society, solace and comfort, and companionship, and have suffered great mental and emotional distress, pain and suffering, in an amount to be proved at trial.

83. The acts, omissions and/or wrongful conduct of the Assailants manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

84. The Assailants' acts, omissions and/or wrongful conduct justify punitive and/or exemplary damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION – FALSE IMPRISONMENT**

**(Against the Assailants)**

85. Plaintiff hereby incorporates the preceding paragraphs as if set forth fully herein.

86. As outlined more fully above, the Assailants intended to (and did) confine Jason as they viciously and brutally attacked and killed him.

87. As outlined more fully above, Jason was aware that he was confined during the

Assailants' vicious and brutal attack.

88. Pursuant to Utah Code Ann. Section 78B-3-107, Plaintiff is entitled to economic and non-economic damages, including pain and suffering endured by Jason until his death.

89. As a direct and proximate result of the actions and inactions of the Assailants, Jason suffered, and Plaintiff is entitled to recover damages including but not limited to, pain and suffering, in an amount to be proved at trial.

90. The Assailants' acts or omissions and wrongful conduct caused or was a substantial factor in Jason's death.

91. As a direct and proximate result of the Assailants' acts, omissions and wrongful conduct, Plaintiff and the other heirs of Jason have been deprived of his society, solace and comfort, and companionship, and have suffered great mental and emotional distress, pain and suffering, in an amount to be proved at trial,.

92. The acts, omissions and/or wrongful conduct of the Assailants manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

93. The Assailants' acts, omissions and/or wrongful conduct justify punitive and/or exemplary damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For damages in an amount to be proved at trial;
2. For punitive and/or exemplary damages;
3. For prejudgment and post-judgment interest;
4. For attorneys' fees and costs incurred herein; and
5. For such other and further relief as the Court deems just and equitable under the circumstances.

Dated this 3rd day of May, 2017.

                              **LAYFIELD & BARRETT, APC**

                              /s/ Shane D. Gosdis
                              Shane D. Gosdis
                              Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

THE UNDERSIGNED CERTIFIES that on this 28th day of April 2017, a copy of the foregoing was filed and served via the Court's ECF system upon the following:

>Paul W. Shakespear, Esq.
>Snell & Wilmer, L.L.P.
>15 South Temple, #1200
>Salt Lake City, Utah 84101

>Stanford Pitts, Esq.
>S. Spencer Brown, Esq.
>Jessica J. Johnson, Esq.
>Strong & Hanni
>102 South 200 East
>Suite 800
>Salt Lake City, Utah 84111

/s/ Shane D. Gosdis